UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAZEL JACKSON,<br>Plaintiff,<br>v.<br>UNIFI AVIATION LLC, et al.,<br>Defendants. | Case No.: 25-cv-03159-AJB-MMP<br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT UNIFI AVIATION LLC'S MOTION TO COMPEL ARBITRATION**<br>**(Doc. No. 17)** |

Before the Court is Defendant Unifi Aviation LLC's ("Unifi") motion to compel the claims of Plaintiff Pazel Jackson ("Plaintiff") to arbitration and stay the proceedings. (Doc. No. 17.) Both Plaintiff and Defendant Arthur Menelaus Pappas ("Pappas") oppose. (*See* Doc. Nos. 23–25 (Plaintiff's opposition); 26 (Pappas's opposition).) For the reasons set forth below, the Court **GRANTS in part** and **DENIES in part** the motion.

## I. BACKGROUND

Plaintiff was employed by Unifi as a wheelchair assistant at the San Diego International Airport starting approximately June 29, 2016. (Doc. No. 1-2, Complaint ("Compl."), ¶ 11.) In April 2023, Unifi began requiring California-based employees hired

before May 2021 to sign an arbitration agreement ("the Agreement") as a condition of continued employment. (Doc. No. 17-1 at 8; Doc. No. 17-2, Declaration of Jennifer L. Gomez ("Gomez Decl."), ¶ 6; Doc. No. 17-5 at 3–8 Arbitration Agreement ("Agreement").) In April 2023, Unifi's Human Resources team compiled a list of California employees who had not yet signed the Agreement. (Gomez Decl. ¶ 6.) Plaintiff's employee ID number, most current home address, and most current personal email address were on the list. (*Id.* ¶ 7.) According to Gomez, Unifi emailed Plaintiff a copy of the Agreement on April 21, 2023, and mailed him a copy of the Agreement on April 28, 2023, neither of which was returned as undeliverable. (*Id.* ¶¶ 9–11.) Both transmissions clearly communicated that Plaintiff's continued employment would constitute acceptance of the Agreement. (*Id.* ¶ 13.) Unifi received a FedEx delivery confirmation for the mailed copy. (*Id.* ¶¶ 9, 11; *see* Doc. No. 17-7 (FedEx Confirmation).) However, Plaintiff disputes ever receiving or being informed of the Agreement. (Doc. No. 25, Declaration of Plaintiff Pazel Jackson ("Jackson Decl."), ¶ 4.) Plaintiff avers he "never received" the Agreement, does "not recall receiving any email or mail in April or May 2023" containing the Agreement, and "was never told that [he] was required to sign an arbitration agreement as a condition of [his] employment or continued employment." (Jackson Decl. ¶¶ 4–5.) The parties agree, however, that Plaintiff did not sign the Agreement and continued working for Unifi. (Gomez Decl. ¶ 15; Jackson Decl. ¶ 3.)

On April 2, 2024, Plaintiff alleges he was physically assaulted by a passenger, Pappas, while performing his job duties on a jet bridge. (Compl. ¶¶ 12–13.) Plaintiff reported the incident to his supervisor and the San Diego Harbor Police. (*Id.* ¶ 14.) The following day, Unifi suspended Plaintiff pending an investigation. (*Id.* ¶ 16.) On April 23, 2024, Unifi terminated Plaintiff at the request of Delta Air Lines ("Delta") for alleged "gross misconduct." (*Id.* ¶ 18.) Plaintiff alleges that his termination was a "pretext for unlawful discrimination and retaliation" based on his race. (*Id.* ¶ 35.)

On September 10, 2025, Plaintiff sent Unifi a personnel-file request seeking all signed documents, including any arbitration agreements. (Doc. No. 23 at 7.) Despite these

requests, Plaintiff contends that Unifi failed to provide him with any arbitration agreement at the time. (Jackson Decl. ¶ 6.)

Plaintiff filed the Complaint in the San Diego County Superior Court on October 15, 2025, asserting nine causes of action against Unifi and Pappas: race discrimination; harassment; retaliation; failure to prevent discrimination, harassment, and retaliation; wrongful termination; whistleblower retaliation; unfair business practices; and assault and battery. (*See generally* Compl.) Unifi was served on October 17, 2025, and defense counsel first raised arbitration as a defense on October 27, 2025. (Doc. No. 23 at 7.) Unifi produced a copy of the Agreement on November 3, 2025. (*Id.*) Unifi filed its Answer on November 13, 2025, asserting arbitration as an affirmative defense and removing the action to this Court the following day. (*Id.*) Unifi filed the instant Motion to Compel Arbitration and Stay Proceedings on December 29, 2025. (Doc. No. 17.) Plaintiff opposed (Doc. No. 23), and Unifi replied (Doc. No. 27).

## II. LEGAL STANDARD

The Federal Arbitration Act ("FAA") applies to contracts "evidencing a transaction involving commerce." 9 U.S.C. § 2; *Brennan v. Opus Bank*, 796 F.3d 1125, 1129 (9th Cir. 2015). "Generally, a court must determine two issues before deciding whether to compel arbitration: (1) whether there is an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute." *Knapke v. PeopleConnect, Inc.*, 38 F.4th 824, 831 (9th Cir. 2022) (quoting *Zoller v. GCA Advisors, LLC*, 993 F.3d 1198, 1201 (9th Cir. 2021)). If the two factors are met, the Court must enforce the arbitration agreement in accordance with its precise terms. *Kilgore v. KeyBank, Nat. Ass'n*, 673 F.3d 947, 955 (9th Cir. 2012), *on reh'g en banc,* 718 F.3d 1052 (9th Cir. 2013).

The party seeking to compel arbitration "has the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence." *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014). "In determining whether a valid arbitration agreement exists, federal courts apply ordinary state-law principles that govern the formation of contracts." *Heckman v. Live Nation Ent., Inc.*, 120 F.4th 670, 680 (9th Cir.

2024), *cert. denied sub nom. Live Nation v. Heckman*, No. 24-1145, 2025 WL 2823733 (U.S. Oct. 6, 2025); *see also Olson v. FCA US, LLC*, 176 F.4th 612, 617 (9th Cir. 2026) ("Arbitration is a matter of contract."). "Thus, generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening" federal law. *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996). "[T]he party opposing arbitration bears the burden of proving any defense, such as unconscionability." *Pinnacle Museum Tower Ass'n. v. Pinnacle Mkt. Dev. (US), LLC* ("*Pinnacle*"), 55 Cal. 4th 223, 236 (2012).

## III. DISCUSSION

Unifi moves to compel arbitration of Plaintiff's claims on the basis that a valid, enforceable, and non-waived arbitration agreement exists and covers all of Plaintiff's claims. (Doc. No. 17-1 at 15.) Plaintiff opposes, asserting that no valid agreement exists, that any agreement is unconscionable, that non-signatory Pappas cannot enforce it, and that Unifi has waived its right to compel arbitration. (Doc. No. 23 at 7–10, 17.) Pappas opposes, arguing he cannot be compelled to arbitrate claims as a non-signatory to the Agreement. (Doc. No. 26 at 5.)

### A. Evidentiary Challenges

As a threshold issue, Plaintiff challenges the authentication of the Agreement. (Doc. No. 23 at 8.) Specifically, Plaintiff argues that Unifi does not authenticate the Agreement through a declarant with personal knowledge and has not established the Agreement as a business record. (*Id.* (relying first on Cal. Evid. Code § 1301; then Cal. Evid. Code § 1271).)

"In ruling on a motion to compel arbitration, courts apply the 'summary judgment standard outlined' in Rule 56." *Rubio-Leon v. Fresh Harvest, Inc.*, 812 F. Supp. 3d 944, 949 (N.D. Cal. 2025) (quoting *Hansen v. LMB Mortg. Servs., Inc.*, 1 F.4th 667, 670 (9th Cir. 2021)). As such, "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). "Authentication is a 'condition precedent to admissibility,' and this condition is

satisfied by 'evidence sufficient to support a finding that the matter in question is what its proponent claims.'" *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002) (quoting Fed. R. Evid. 901(a)); *see also* Fed. R. Evid. 901(b) (providing ten approaches to authentication); Fed. R. Evid. 902 (identifying self-authenticating evidence).[1]

Courts applying this standard have found declarations sufficient where the declarant identifies a specific institutional role tied to the records at issue and describes the underlying record-keeping process, rather than merely describing the fact that a document was transmitted. *Hartranft v. Encore Cap. Grp., Inc.*, 543 F. Supp. 3d 893, 915 (S.D. Cal. 2021). In *Hartranft*, the court found a declaration was adequate because the declarant identified himself as a Control Officer, described his years of experience with the company's record-keeping practices, and stated that the exhibits were correct and maintained. *Id.*

To support the instant motion, Unifi proffers two declarations and twelve exhibits. Contrary to Plaintiff's assertion that "Defendant offers only attorney Wilfred Gual's declaration," (Doc. No. 23 at 8), the first attachment to the instant motion is the Declaration of Jennifer L. Gomez, Unifi's Human Resources Manager since November 2020, (Gomez Decl.). Gomez avers that her knowledge is based on personal involvement in the Agreement rollout and on Unifi's business records, and she describes how the employee list was compiled, how the email and mailed copies of the Agreement were sent, and how they were tracked. (*Id.* ¶¶ 2, 6–11.) Further, Gomez attached the Agreement itself, along with the email and letter transmitting it to Plaintiff. (*Id.* ¶¶ 8, 10, 13.) The declaration is a process-specific showing that properly authenticates the Agreement under Rule 901(a). *See, e.g.*, *Hartranft*, 543 F. Supp. 3d at 915.

Therefore, Plaintiff's authentication challenge fails, and the Agreement is properly before the Court.

---

[1] Plaintiff relies on the California Evidence Code; however, evidentiary challenges on a motion to compel arbitration filed in federal court are governed by the Federal Rules of Evidence.

**B. Contract Formation**

Having found the Agreement to be properly authenticated, the next question is whether Plaintiff accepted its terms through continued employment.[2] Unifi asserts that Plaintiff impliedly accepted the Agreement by continuing to work for nearly a year after receiving notice by both mail and email that his continued employment after May 28, 2023 constitutes acceptance. (Doc. No. 17-1 at 15–16.) In opposition, Plaintiff argues that acceptance cannot be formed through passive conduct alone, particularly where Plaintiff denies ever receiving or being informed of the Agreement. (Doc. No. 23 at 7.)

"[G]eneral principles of contract law determine whether the parties have entered a binding agreement to arbitrate.'" *Pinnacle*, 55 Cal. 4th at 236 (quoting *Craig v. Brown & Root, Inc.*, 84 Cal. App. 4th 416, 420 (2000)). Under California law, a contract is established when (1) the parties are capable of contracting, (2) the parties consent to the contract, (3) the contract describes a lawful object, and (4) there was sufficient cause or consideration supporting the contract. Cal. Civ. Code § 1550; *see also Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014) ("It is undisputed that under California law, mutual assent is a required element of contract formation."). "A party's acceptance of an agreement to arbitrate may be express, as where a party signs the agreement. A signed agreement [to arbitrate] is not necessary, however, and a party's acceptance may be implied in fact or be effectuated by delegated consent." *Pinnacle*, 55 Cal. 4th at 236 (citing first *Craig*, 84 Cal. App. 4th at 420; then *Ruiz v. Podolsky* 50 Cal. 4th 838, 852–54 (2010)); *see also Asmus v. Pac. Bell*, 23 Cal. 4th 1, 11 (2000) ("California law permits employers to implement policies that may become unilateral implied-in-fact contracts when employees accept them by continuing their employment.").

///

///

---

[2] The Court need not address Plaintiff's arguments about Unifi "fail[ing] to authenticate the signature" because both Unifi and Plaintiff agree Plaintiff did not sign the Agreement. (*Compare* Doc. No. 17-1 at 8–9 *with* Doc. No. 23 at 7.)

Plaintiff's argument that his acceptance of the Agreement cannot be implied through his continued employment is unmoored from precedent. *See, e.g.*, *Diaz v. Sohnen Enters.*, 34 Cal. App. 5th 126, 130 (2019) ("California law in this area is settled: when an employee continues his or her employment after notification that an agreement to arbitration is a condition of continued employment, that employee has impliedly consented to the arbitration agreement."); *Avery v. Integrated Healthcare Holdings, Inc.*, 218 Cal. App. 4th 50, 63 (2013) ("A unilateral implied-in-fact arbitration agreement may be enforced against an employee to require the employee to arbitrate all claims against his or her employer."); *Craig*, 84 Cal. App. 4th, at 419–20; *Pinnacle*, 55 Cal. 4th at 236.

However, to apply this doctrine, the employer must give the employee notice of the arbitration agreement. Gomez describes the specific process by which Unifi compiled the list of employees who had not signed, tracked whether the email and letter sent to Plaintiff were returned as undeliverable, and explained why no receipt was generated for Plaintiff's Gmail account despite the email being sent. Unifi also submitted a delivery confirmation showing the mailed Agreement reached Plaintiff's address. This documented, process-specific showing supports an inference of receipt. *See Craig*, 84 Cal. App. 4th at 421 ("This evidence created a presumption that [Plaintiff] received the items that were sent, and shifted the burden of producing evidence to h[im].").

To oppose this evidence, Plaintiff only proffers his assertions that he "never received this arbitration agreement" and that he "do[es] not recall receiving any email or mail in April or May 2023 containing an arbitration agreement." (Jackson Decl. ¶¶ 4–5.) However, Plaintiff does not contest the accuracy of either the mailing address or email address to which Unifi sent the Agreement. (*See generally id.*) Nor does Plaintiff proffer any other specific details to support his denials. (*Id.*) Weighing the evidence presented, even when viewed reasonably in the light most favorable to the non-moving party, substantial evidence supports that Plaintiff received the Agreement. *See Craig*, 84 Cal. App. 4th at 422; *see also Baghdasarian v. Macy's, Inc.*, No. CV2104153ABMAAX, 2021 WL 12251599, at *5 (C.D. Cal. Oct. 28, 2021) ("While Plaintiff's denials of receipt suffice to

overcome the mailbox rule presumption, they fail to convince the Court that he did not receive the mailings in question. Mail, once sent, is rarely lost, and Plaintiff's denials amount to a claim that lightning has struck twice in the same place. The Court therefore finds that Plaintiff did receive the arbitration agreement and opt-out forms by mail.”).

Moreover, the email and letter made clear that continued employment would constitute acceptance. (Doc. Nos. 17-5 at 2 (Email) (“The Mutual Arbitration Agreement is a condition of your continued employment with Unifi after May 28, 2023, and your continued employment with the Company after that date will constitute your acceptance of the Agreement. As such, through your continued employment with Unifi, you agree to the Mutual Arbitration Agreement, including arbitrating claims related to your employment with the Company on an individual basis.”); 17-6 at 2 (Letter) (same).) As such, Unifi clearly conveyed that Plaintiff’s continued employment was explicitly conditioned on acceptance of the Agreement. *See, e.g.*, *Harris v. TAP Worldwide, LLC*, 248 Cal. App. 4th 373, 384 (2016) (holding that beginning and continuing to work after an employer presents an arbitration agreement as a condition of employment constitutes both performance and acceptance of consideration—both of which are acceptance of the terms).

Finally, it is undisputed that Plaintiff continued working for approximately one year after receiving notice that his continued employment after May 28, 2023 would constitute acceptance of the Agreement, and did so without expressly or timely rejecting the Agreement. *Cf. Mar v. Perkins*, 102 Cal. App. 5th 201, 218 (2024).

Considering the evidence presented, the Court finds that Plaintiff received the Agreement, which explicitly conditioned continued employment on acceptance, was provided a month to consider the terms, and then proceeded to work for Unifi for another year. As such, under California’s contract formation laws, Plaintiff assented to arbitrate claims pursuant to the Agreement. *See, e.g.*, *Deneau v. Coastal Home Care Servs., Inc.*, 744 F. Supp. 3d 950, 955 (N.D. Cal. 2024) (“[U]nder the relevant California law, Deneau’s continued employment after receiving notice of the 2021 arbitration agreement—which explicitly conditioned Deneau’s employment on the acceptance of its detailed terms—

constitutes an implied-in-fact agreement to arbitrate her claims.”).

**C. Delegation Clause**

Next, Unifi argues that the Agreement’s delegation clause clearly and unmistakably delegates the question of enforceability to an arbitrator. (Doc. Nos. 17-1 at 12–13; 27 at 8.) Plaintiff does not contest that there is a delegation clause. (*See generally* Doc. No. 23.) Rather, Plaintiff argues more generally that the Agreement is unconscionable, an argument wherein Plaintiff references the delegation clause in four instances. (*Id.*)

“Who gets to decide the arbitration agreement’s validity—an arbitrator or a court—depends on whether there is ‘clear and unmistakable’ evidence that the parties agreed to delegate the validity question to the arbitrator.” *Sandler v. Modernizing Med., Inc.*, 170 F.4th 1209, 1212 (9th Cir. 2026) (quoting *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 69 n.1 (2010)). “If there is such evidence, then the arbitrator has the power to resolve that question of ‘arbitrability.’” *Id.*

Here, the Agreement includes a delegation clause that provides:

> The arbitrator, and not any federal, state, local court, or government agency, shall have exclusive authority to resolve any and all disputes regarding the validity, interpretation, applicability, enforceability, or formation of this agreement, including but not limited to the arbitrability of any claims, notwithstanding anything to the contrary in the JAMS Rules, to the full extent permissible by applicable law.

(Agreement § 12.) The clause carves out from the arbitrator’s authority disputes over the enforceability of the Class and Collective Action Waivers or the PAGA Individual Action Requirement are reserved for a court, not an arbitrator, to decide. (*Id.*) Because the delegation clause grants “exclusive authority” over the Agreement’s validity, enforceability, and arbitrability, the text provides clear and unmistakable evidence of the parties’ intent to delegate.

Additionally, “[i]ncorporation of the JAMS arbitration rules by reference constitutes clear and unmistakable evidence that the parties agree to arbitrate arbitrability.” *Patrick v. Running Warehouse, LLC*, 93 F.4th 468, 481 (9th Cir. 2024). Here, the Agreement provides

that "[a]rbitration will be conducted pursuant to the JAMS Employment Arbitration Rules and Mediation Procedures and the JAMS Policy on Employment Arbitration Minimum Standards of Procedural Fairness." (Agreement § 1.) Because "[t]he agreement incorporates the JAMS rules, which delegate the question of the agreement's validity to the arbitrator," the incorporation itself "evinces a 'clear and unmistakable' intent to delegate." *See Sandler*, 170 F.4th at 1212.

In opposition, Plaintiff challenges the enforceability of the Agreement as a whole by asserting that the Agreement is procedurally and substantively unconscionable. (Doc. No. 23 at 8–19.)

"[T]o sufficiently challenge a delegation provision, the party resisting arbitration must specifically reference the delegation provision and make arguments challenging it." *Bielski v. Coinbase, Inc.*, 87 F.4th 1003, 1011 (9th Cir. 2023). "[I]f a party cites provisions outside of the delegation clause in making an unconscionability challenge, it must explain how those provisions make *the fact of an arbitrator deciding arbitrability* unconscionable." *Holley-Gallegly v. TA Operating, LLC*, 74 F.4th 997, 1002 (9th Cir. 2023) (emphasis in original).

"Under California law, 'the party opposing arbitration bears the burden of proving any defense, such as unconscionability.'" *Bielski*, 87 F.4th at 1013 (quoting *Pinnacle*, 55 Cal. 4th at 236). "[A] contract is unconscionable if one of the parties lacked a meaningful choice in deciding whether to agree and the contract contains terms that are unreasonably favorable to the other party." *Ronderos v. USF Reddaway, Inc.*, 114 F.4th 1080, 1089 (9th Cir. 2024). "For a court to refuse to enforce a provision due to unconscionability, a party must show the provision has elements of both procedural and substantive unconscionability."[3] *Bielski*, 87 F.4th at 1013. Courts analyze unconscionability on a

---

[3] "The procedural element addresses the circumstances of contract negotiation and formation, focusing on oppression or surprise due to unequal bargaining power." *OTO, L.L.C. v. Kho*, 8 Cal. 5th 111, 125 (2019). The substantive element "examines the fairness of a contract's terms." *Lim v. TForce Logistics, LLC*, 8 F.4th 992, 1001 (9th Cir. 2021) (quoting *OTO*, 8 Cal. 5th at 129).

"sliding scale," such that "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 114 (2000).

Here, Plaintiff does not fashion an unconscionability defense targeting the delegation clause or assert that the reasons the Agreement is unconscionable apply equally to the delegation clause. (*See generally* Doc. No. 23.) Rather, Plaintiff only connects the delegation clause to two arguments—surprise and a lack of mutuality. The Court addresses each in turn.[4]

First, Plaintiff argues the Agreement is procedurally unconscionable because it was imposed through surprise. (Doc. No. 23 at 9–10.) Specifically, as relevant to the delegation clause, Plaintiff argues that the provision "involve[s] complex legal concepts requiring legal training to understand," and "[t]here is no evidence Plaintiff was advised to seek counsel or given meaningful time to review the 12+ page agreement with complex legal terms, delegation clause, and class/PAGA waivers." (*Id.*)

Unifi responds that Plaintiff presents no evidence of surprise, either by demonstrating the Agreement was "hidden or unclear" or by supporting with evidence "his assertion that he did not receive the Agreement." (Doc. No. 27 at 10.) In contrast, Unifi argues that the Agreement "is conspicuous and clear and is typed in legible font" and was sent to Plaintiff in two different methods. (*Id.*)

"[S]urprise involves the extent to which the supposedly agreed-upon terms are

---

[4] All other unconscionability arguments were asserted as to making "the *entire agreement*, rather than the delegation clause *specifically*, unconscionable," and thus are waived. *Holley-Gallegly*, 74 F.4th at 1003 n.3; *see, e.g.*, *Xatruch v. Raising Canes U.S.A., LLC*, No. 2:25-CV-03341-DJC-SCR, 2026 WL 2517545, at *5 (E.D. Cal. Aug. 26, 2026) ("Here, the Court finds that although Plaintiff has pointed to provisions that may demonstrate unconscionability and has mentioned the delegation clause, she has not explained <u>how</u> those provisions impact the question of arbitrability specifically. Absent any such discussion, the Court finds that Plaintiff has forfeited her ability to challenge the delegation provision's validity.") (emphasis in original) (collecting cases).

hidden in a prolix printed form drafted by the party seeking to enforce them." *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1280 (9th Cir. 2006) (quoting *Flores v. Transamerica HomeFirst, Inc.*, 93 Cal. App. 4th 846, 853 (2001)). Here, contrary to Plaintiff's characterization, the Agreement spans six pages, is legible in both typeface and font, includes sufficient white space for visual clarity, and incorporates numbered sections, labeled headings, and bolded defined terms. Although the delegation clause includes legal terms, the structure and phrasing clearly put even a lay reader on notice that the arbitrator, not a court, would decide all issues regarding the Agreement. Considering both the circumstances of Agreement's presentment and the delegation clause in context with the rest of the Agreement, this is not a prolix printed form drafted to ensure agreement without understanding or awareness of the delegation clause. *Cf. OTO, L.L.C.*, 8 Cal. 5th at 128. Accordingly, the Court finds Plaintiff fails to meet his burden of demonstrating the existence of surprise with regard to the delegation clause.

Second, Plaintiff argues the Agreement is substantively unconscionable because it lacks mutuality. Specifically, Plaintiff argues that, by "carv[ing] out class/collective/PAGA waivers," the "selective delegation" clause "reserve[es] for courts only issues where California law protects employees" and "demonstrates one-sided drafting." (Doc. No. 23 at 11.) Similarly, Plaintiff argues that the delegation clause, like "all onerous provisions, . . . disproportionately impact[s] employee claims," and that "[a]n employer bringing an action against an employee would face none of these barriers." (*Id.* at 13–14.)

Unifi asserts that "Plaintiff's argument is without merit, based on his own assertions, and not supported by any legal authority." (Doc. No. 27 at 13.) Instead, Unifi argues the Agreement is "mutual and bilateral." (*Id.*)

The language of the delegation clause binds Plaintiff and Unifi equally. If anything, Plaintiff's argument that the delegation clause reserves for the Court issues *where California law protects employees* suggests that the purported "one-sided" drafting is in Plaintiff's favor. However, other courts have found that similar carve outs from delegation clauses are not evidence of a lack of mutuality. *See, e.g.*, *Magdaleno v. CCFI Companies,*

*LLC*, No. 2:25-CV-00914-DAD-JDP, 2026 WL 622197, at *5 (E.D. Cal. Mar. 5, 2026); *Rivera v. Uniqlo Cal., LLC*, No. 17-cv-02848-JAK-JPR, 2017 WL 6539016, at *14 (C.D. Cal. Sept. 8, 2017). Additionally, although Plaintiff asserts that the delegation clause is "onerous" and only benefits Unifi, Plaintiff fails to explain why or how the delegation clause burdens Plaintiff and exempts Unifi from those burdens. *Cedillo v. Artech Info. Sys., LLC*, No. 2:25-CV-09241-AH-(AYPX), 2026 WL 974280, at *6 (C.D. Cal. Mar. 19, 2026) ("Without an explanation as to why there is a lack of mutuality that unfairly favors Defendants, the Court does not find the delegation clause to be substantively unconscionable."). Because there is "nothing in the delegation clause upon which to conclude that it lacks mutuality or is otherwise unreasonably favorable to" Plaintiff, the delegation clause is not substantively unconscionable for lack of mutuality. *See, e.g.*, *Tiri v. Lucky Chances, Inc.*, 226 Cal. App. 4th 231, 247 (2014) ("This mutuality is nearly unqualified, and it is far more than the 'modicum of bilaterality' required by our state Supreme Court in employment arbitration agreements."). Accordingly, the Court finds Plaintiff fails to meet his burden of demonstrating the existence of substantive unconscionability with regard to the delegation clause.

Because Plaintiff fails to meet his burden to demonstrate either procedural or substantive unconscionability, the Court finds the delegation clause to be enforceable. Accordingly, the Court grants Unifi's motion to compel Plaintiff's claims asserted against Unifi to arbitration. Plaintiff is free to challenge the unconscionability of the Agreement in proceedings before the arbitrator, along with raising the issue of waiver or any other arguments Plaintiff may have. *See, e.g.*, *Jurosky v. BMW of N. Am., LLC*, 441 F. Supp. 3d 963, 975–76 (S.D. Cal. 2020) ("Because arbitrability is clearly delegated to the arbitrator, Plaintiff's other arguments in opposition—such as waiver—must be reserved for the arbitrator.").

**D. Claims Against Pappas**

The instant motion seeks to compel all of Plaintiff's claims to arbitration without express consideration that claims are asserted against two distinct defendants: Unifi,

Plaintiff's employer, and Pappas, a customer of Delta. (*See generally* Doc. No. 17; *see also* Compl. ¶¶ 2–5.) After both Plaintiff and Pappas filed oppositions to the instant motion, Unifi replies that "[t]here is no doubt that all Defendants can compel arbitration of Plaintiff's claims, despite Plaintiff and Mr. Pappas' arguments in their respective Oppositions." (Doc. No. 27 at 14.) The rest of Unifi's barebones argument—that "Pappas is a third-party beneficiary as a passenger in the airport that Unifi provides services"—is relegated to a footnote. (*Id.* at 14 n.9.)

As an initial matter, "[a]rguments raised only in footnotes, or only on reply, are generally deemed waived." *Malone v. Williams*, 112 F.4th 867, 882 (9th Cir. 2024) (quoting *Est. of Saunders v. Comm'r*, 745 F.3d 953, 962 n.8 (9th Cir. 2014)). Unifi raises its third-party beneficiary argument in the first instance in a footnote to its reply brief. For those reasons, the Court could disregard Unifi's assertions. However, even considering the merits of Unifi's assertion, it fails under the circumstances.

"General contract and agency principles apply in determining the enforcement of an arbitration agreement by or against nonsignatories." *Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1045 (9th Cir. 2009). "To that, there are six theories by which a nonsignatory may be bound to arbitrate: (a) incorporation by reference; (b) assumption; (c) agency; (d) veil-piercing or alter ego; (e) estoppel; and (f) third-party beneficiary." *Philadelphia Indem. Ins. Co. v. SMG Holdings, Inc.*, 44 Cal. App. 5th 834, 841 (2019) (cleaned up); *see also Mundi*, 555 F.3d at 1045. "Whether a nonsignatory is an intended third party beneficiary to the contract is determined from the parties' intent, as gleaned from the contract as a whole and the circumstances under which it arose." *Philadelphia Indem. Ins. Co.*, 44 Cal. App. 5th at 841.

Analyzing the Agreement between Unifi and Plaintiff, there is no evidence that airline passengers are an intended third-party beneficiary. The connection between Unifi providing services for an airport, the employment of Plaintiff by Unifi, and the purchase of a ticket to travel through that airport is too attenuated on its face and left unsupported by any evidence as argued by Unifi. Moreover, the Court need not address Unifi's argument

that Pappas could compel Plaintiff's claims against him to arbitration as Pappas is opposing the instant motion. (*See* Doc. No. 26.)

Accordingly, to the extent Unifi sought to compel Plaintiff's claims against Pappas to arbitration, the instant motion is denied.

## IV. CONCLUSION

For the reasons discussed above, the Court hereby **ORDERS**:

1. Defendant Unifi Aviation LLC's motion to compel arbitration is **GRANTED** as to claims asserted against it and **DENIED** as to the claims asserted against Defendant Arthur Menelaus Pappas. Plaintiff Pazel Jackson must arbitrate his claims against Defendant Unifi Aviation LLC pursuant to the terms of the Arbitration Agreement.

2. The instant action is **STAYED** as to all claims asserted by Plaintiff Pazel Jackson against Defendant Unifi Aviation LLC pending arbitration.

3. Defendant Unifi Aviation LLC and Plaintiff Pazel Jackson must file a joint status report addressing the status of arbitration is due **no later than <u>November 18, 2026</u>**, with specific details including the date when the parties submitted the matter to arbitration.

4. **Every sixty days thereafter**, Defendant Unifi Aviation LLC and Plaintiff Pazel Jackson must file joint status reports informing the Court about the status of arbitration, including specific details regarding subsequent dates, any changes to dates, and actions the parties are taking to facilitate the process.

5. **No later than <u>September 23, 2026</u>**, Plaintiff Pazel Jackson and Defendant Arthur Menelaus Pappas are to contact the chambers of Magistrate Judge Michelle M. Pettit to reset an Early Neutral Evaluation and Case Management Conference. (*See* Doc. No. 35.)

**IT IS SO ORDERED.**

Dated: September 18, 2026

Hon. Anthony J. Battaglia
United States District Judge